**Victim Impact Statement of the Fujikura Ltd. and AFL**

In response to a request by the United States Probation Office to describe the impact to the Company (Fujikura Ltd. and AFL) as a result of the conduct of Defendant Jody Gallagher, the Company provides the following information and stands ready to provide additional detail as requested.

*Brief Background of AFL, as a wholly owned subsidiary of Fujikura Ltd.*

Jody Gallagher served as the President and Chief Executive Officer of AFL and Director and Corporate Officer of Fujikura Ltd., a Japanese public company.

AFL is in the business of providing industry-leading solutions, products and services to the energy, service provider, enterprise and industrial markets as well as a number of emerging markets.

AFL manufactures, engineers and installs fiber optic products and associated equipment. This includes fiber optic cable, conductor accessories, fiber optic connectivity, fusion splicers, test and inspection equipment. AFL's service portfolio includes market-leading positions with communications companies supporting data center, outside plant, wireless and enterprise applications. Its mission is to connect AFL customers around the world with innovative technologies, exceptional products and high-quality services.

As a wholly owned subsidiary of Fujikura Ltd., a Japanese public company that provides services worldwide in a variety of related business sectors (https://www.fujikura.co.jp/eng/), AFL employs over 5,800 people worldwide. AFL's customers range from very large energy and service providers to small businesses deploying fiber optic networks.

With its corporate headquarters located in Duncan, South Carolina, AFL also has operations in several locations across the United States, Mexico, Canada, Europe, Asia and the South Pacific, and sells its solutions, products and services around the world.

*Brief Background of Jody Gallagher as it relates to AFL and Fujikura*

Mr. Gallagher began his career in 1979 with Alcoa as a financial analyst at Alcoa's Rockdale, Texas, operation. In 1988, he was selected as accounting manager for AFL, at the time a joint venture between Alcoa and Fujikura. He then moved into sales where ultimately, he served as national sales manager. In addition to these roles in finance and sales, Mr. Galagher led the Optical Fiber Systems business and served as general manager for fiber optic cables before being named president in 2003. In 2005, Fujikura assumed full ownership of AFL and named Mr. Gallagher as President and Chief Executive Officer. In 2018, he was elected to Fujikura Ltd.'s Board of Directors at their Annual Shareholders meeting in Tokyo, becoming the first American to ever serve on the company's board.

*Allegations of a Whistleblower*

Based on the allegations of a whistleblower, Fujikura conducted an internal investigation and concluded that Jody Gallagher breached his fiduciary duties with fraudulent intent in a number of

ways, including through the unauthorized purchase of a property in Kiawah Island and the construction of a luxury home at AFL's expense on that property, the personal use of a company airplane, the payment of his personal expenses using his company credit card and an AFL Bank of America checking account.

The identification of financial losses includes:

• The purchase of a $4 million property on Kiawah Island (intended loss not brought to fruition).

• Payments for a building situated on the Kiawah Island property cited above and the misrepresentation that such payments were for AFL business and benefit as well as disguising these payments as lobbying expenses.

• Causing AFL to pay for taxes on said property, though listed as an asset for AFL, and thereby intending AFL to suffer a loss when the scheme was complete.

• Use of AFL credit cards for personal use and providing receipts for some items, claiming they were for the benefit of AFL.

• Payments for personal items using the AFL Bank of America account.

• Utilizing the airplane, that was either owned by AFL, or subsequently leased by AFL, for personal use.

Mr. Gallagher's breach of his position of trust and fraudulent conduct had significant impacts on Fujikura Ltd. and its wholly owned subsidiary AFL. In response, the Company had to engage legal counsel both in Japan and in the United States as well as the services of a private investigator and forensic accountants to investigate the allegations, report the allegations and findings of the internal investigation as required by law to Japanese authorities that oversee public companies, make disclosures to shareholders, resume a previously adjourned shareholders' meeting (see notice regarding the adjourned shareholders' meeting to update shareholders (https://www.fujikura.co.jp/eng/newsrelease/ir/__icsFiles/afieldfile/2023/06/05/TDnet_keizokuk ai_5803e.pdf), and ensure that its external auditors in both Japan and the United States examined the findings and provided an expanded audit report, all at significant financial cost to the Company and the significant expenditure of the Company's human resources. In addition, numerous corrective and remedial actions had to be taken, and a new management team had to be installed at AFL.

*Financial Impact Statement*

The financial impact of Mr. Gallagher's fraudulent conduct is extensive and detailed in the attached Financial Impact Statement prepared by the Company's forensic accountants, BDO. The Financial Impact Statement is incorporated herein and made a part of this Victim Impact Statement. Based on this Financial Impact Statement, the Company is seeking restitution in the amount of $2,399,104.50. This amount does not cover all of the financial costs incurred but is directly related to the charged and relevant fraudulent conduct that was part of the scheme to

defraud, as well as the investigative costs of the private investigator, the forensic accounting firm and the data recovery firm in Japan. This amount does not include the significant legal costs incurred or the other economic costs set forth above.

Please see the accompanying Financial Impact Statement, included herewith as Exhibit A.

*BDO Report Regarding Estimated Financial Impact of Charged and Uncharged/ Relevant Conduct Related to J. Gallagher for Use in Victim Impact Statement*

**December 20, 2024**

James A. Carroll, CPA/CFF, CFE, CRMA, MBA, MS
Managing Director, Forensics

**BDO USA, P.C.**
339 Sixth Avenue, 8th Floor
Pittsburgh, PA  15222
412.315.2520
jcarroll@bdo.com



# Table of Contents

Introduction ...................................................................................................................1

Summary of Findings .......................................................................................................1

Approach.......................................................................................................................2

Charged Conduct ............................................................................................................2

Uncharged/Relevant Conduct: Personal Expenses .....................................................................3

    I.       Kiawah Island Club Membership ...............................................................3
    II.      Personal Expenses Paid through Company Travel & Expense ...............................3
    III.    Manual Checks ...................................................................................3
    IV.    Treasury Payments...............................................................................4
    V.      Corporate Jet ....................................................................................4

Interest / Estimated Use of Funds Loss..................................................................................5

Limitations....................................................................................................................5

Conclusion ....................................................................................................................6

Appendix and Schedules ...................................................................................................7



Tel: 412-281-2501      339 Sixth Avenue, 8th Floor
Fax: 412-471-1996     Pittsburgh, PA 15222
www.bdo.com

## I.      Introduction

Fox Rothschild ("Counsel") engaged BDO USA P.C. ("BDO," "us," "we," "our") to assist with its internal investigation of allegations made via a report submitted to Fujikura Ltd.'s ("Fujikura") compliance hotline related to the use of America Fujikura Ltd ("AFL") and AFL Telecommunications LLC ("AFLT") funds by Joseph "Jody" Gallagher ("Mr. Gallagher"), former CEO of AFL and AFLT, both subsidiaries of Fujikura, to purchase land at 9 Eugenia Avenue on Kiawah Island, South Carolina in August 2020 and build a luxury home on that property for his own personal use. BDO was engaged to provide forensic accounting and forensic technology services in support of the internal investigation. The internal investigation includes other alleged misappropriations and/or other potential misconduct by Mr. Gallagher.

We were requested to prepare this report at the direction of ("Counsel") and AFL/Fujikura (the "Company" or "Client"). As requested, we have calculated the estimated financial impact of Charged and Uncharged/Relevant Conduct related to Mr. Gallagher for use in completion of the Victim Impact Statement. The calculation is based on our investigation, along with additional information provided subsequent to the investigation. The analysis includes an estimate of the Company's losses due to its inability to use its funds, which is calculated using AFL's internal rate of return as identified by AFL management.

The analysis and findings presented below reflect our review and analysis of the documents and information received to date. We may update this report, as necessary, should we receive additional relevant information subsequent to the date of this report.

Neither myself nor BDO has a present or contemplated financial interest in the Company. BDO's fees for this analysis are based upon hourly billing rates, and are in no way contingent upon the results of our findings. BDO is independent of the management and owners of the Company. We have not rendered any opinions with respect to any legal claims or legal issues in this matter. It is our understanding that the information in this report will be used solely in the pending matter. Any distribution, copying, reliance on advice or opinions, or use of this report is not authorized without our prior written consent.

## II.      Summary of Findings

This analysis includes the estimated financial impact related to both charged conduct ("Charged Conduct")[1] and uncharged (i.e., relevant) conduct ("Uncharged/Relevant Conduct").[2]

Based on the foregoing we estimated the financial impact as follows:

The total estimated financial impact, as of January 1, 2025, is $2,399,104.50. These figures are based on detailed calculations included in the schedules attached to the Financial Impact Statement.

---

[1] Charged Conduct is conduct Mr. Gallagher was charged with by the U.S. Attorney's Office in South Carolina. We understand charged Conduct relates to the property constructed at 9 Eugenia, Kiawah Island, SC.

[2] Uncharged/Relevant Conduct includes other conduct by Mr. Gallagher which caused the Company to incur expenses, either for Mr. Gallagher's personal benefit or for payment of other non-business transactions.

BDO USA refers to BDO USA, P.C., a Virginia professional corporation, also doing business in certain jurisdictions with an alternative identifying abbreviation, such as Corp. or P.S.C.

BDO USA, P.C. is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.



1. **Charged Conduct** includes all costs related to the acquisition, maintenance, and sale of a personal residence at 9 Eugenia, Kiawah Island, SC, net of proceeds received by the Company from the sale of the property ($498,145.03).

2. **Uncharged/Relevant Conduct** includes non-business expenses paid by the Company as directed by Mr. Gallagher ($1,900,959.47).

III.    Approach

The calculation of estimated financial impact was prepared based on our prior investigation and related analyses and memoranda, as well as discussions with, and additional information provided by, Company management. The additional information provided by management included, but was not limited to, real estate settlement statements, wire transfer confirmations, check images, invoices, expense listings, and details of amounts reported on Mr. Gallagher's W-2, and potential adjustments.[3] The analysis is based on assumptions, including AFL's internal rate of return, and an estimated sentencing date of January 1, 2025. These assumptions may impact the estimated financial impact should they change. (See attached schedules for assumptions.)

IV.    Charged Conduct

Mr. Gallagher caused the Company to acquire land at 9 Eugenia, Kiawah Island, South Carolina, including presenting documentation consistent with his explanation of the transactional purpose. Mr. Gallagher also caused the Company to process payments to Epic Development, a home developer contracted by Mr. Gallagher to construct a personal residence on the land, including presenting documentation consistent with his explanation of the transactional purpose. In addition, the Company made ongoing payments in respect of the property, including property tax payments while Mr. Gallagher was employed by the Company, as well as maintenance, insurance, and property tax payments following Mr. Gallagher's termination. The Company also incurred expenses to list and sell the property to recover funds lost through Mr. Gallagher's alleged conduct.

We obtained and reviewed supporting documentation related to the acquisition and development of 9 Eugenia, including settlement statements, Epic invoices submitted to the Company, and support for payments to quantify the total amounts paid in respect of the property. We also obtained a listing of expenses for property maintenance and upkeep prepared by the Company's Senior Corporate Counsel & Director of Real Estate, which we reviewed for reasonableness. We also obtained a settlement statement for the sale of the property and calculated the proceeds received by the Company, net of seller costs and estimated corporate tax due on the gain,[4] to estimate the Company's net recovery on the sale. The recovery was offset against the identified losses, which include the loss of use of funds over the relevant time period prior to sale, to determine the overall loss or gain to the Company. See Schedule 1 in Appendix A.

---

[3] The Company calculated potential adjustments to Mr. Gallagher's W-2s for the years 2018 to 2022 based on management's analysis of the value of personal items paid by the Company. The adjustments have not been reported to the IRS or Mr. Gallagher and are pending further discussion with the Company's tax advisors and counsel.
[4] The estimated corporate tax due was calculated using the Company's blended federal tax rate for FY2024, plus 5% South Carolina corporate tax rate.



V.      Uncharged/Relevant Conduct: Personal Expenses

   a. *Kiawah Island Club Membership*

Mr. Gallagher directed Company personnel to pay for his membership at the Kiawah Island Club, and other golf clubs, although it was known policy that the Company did not pay for golf or country club memberships.   Additionally, the membership was not included in Mr. Gallagher's executive compensation package, based on information from the Company's VP of Human Resources.

We obtained supporting documentation for the Company's payment to the Kiawah Island Club, including an email from the Chief Financial Officer indicating that the payment was "part of the property purchase that will get refunded at some point."   We also obtained supporting documentation for the partial refund received by the Company, which was offset against the original payment to estimate the Company's loss related to the membership deposit.   See Schedule 2 in Appendix A.

   b. *Personal Expenses Paid Through Company Travel & Expense*

Numerous travel and entertainment expenses were processed that were outside Company policy. Following Mr. Gallagher's termination, Company management performed an analysis of Mr. Gallagher's expense submissions and identified $85,683.72 of expenses between January 2018 and March 2020, and $91,940.29 of expenses between April 2020 and April 2023, which were deemed personal.[5]   We obtained management's detailed analysis of Mr. Gallagher's expenses, which we reviewed and discussed with Company personnel.

We identified one expense designated as personal for which management indicated they could not determine the purpose of the expense.   We excluded the expense, totaling $2,328.80, from the loss calculation.   Additionally, we obtained a schedule prepared by the Company showing potential wage adjustments to be reported on Mr. Gallagher's W-2 based on the expense analysis (and other analyses) performed.   We reconciled the identified deemed personal expenses to the potential W-2 adjustments and included only the portion of personal expenses to be reported on Mr. Gallagher's W-2 as part of the estimated loss calculation.[6]   See Schedule 3 in Appendix A.

   c. *Manual Checks*

The Company has historically used a manual checkbook that is retained and controlled by the Chief Financial Officer, who is also the primary user of the checkbook.   We understand the checkbook is used for expenses requiring immediate payment, however a number of checks were written for Mr. Gallagher's golf memberships and other personal expenses.

Following Mr. Gallagher's termination, Company management performed an analysis of manual checks issued from 2018 to 2023, under both a BB&T checking account (used from 2018 to 2020) and a Bank of America checking account (2020 to 2023).   The analysis identified 10 checks totaling $168,955.26 from the BB&T account, and 23 checks totaling $246,467.07 from the Bank

---

[5] The expenses include a $2,175.00 fee paid to the Town of Kiawah Island in October 2020, which we understand was a license/permit fee related to the construction of 9 Eugenia.   This amount is included within in the calculation of losses under Charged Conduct and excluded from analysis as Uncharged/Relevant Conduct.

[6] The travel & expense items excluded as potential adjustments to Mr. Gallagher's W-2 relate to payments made to Thornblade Golf Club totaling $43,149.74.



of America account, which management classified as personal for the benefit of Mr. Gallagher. We obtained management's detailed analysis which we reviewed and discussed with Company personnel. These checks included payments to golf clubs, university donations in Mr. Gallagher's name, tickets for sporting events, and fees paid to a third-party legal firm.

We also obtained a schedule prepared by the Company showing potential wage adjustments to be reported on Mr. Gallagher's W-2 based on the manual check analysis (and other analyses) performed. We reconciled the identified personal expenses to the potential W-2 adjustments and included only the portion of personal expenses to be reported on Mr. Gallagher's W-2 as part of the estimated loss calculation.[7] Additionally, based on information from Company management, we understand that Mr. Gallagher instructed the Company to withhold a portion of his compensation in certain years related to his use of event tickets.[8] This portion of Mr. Gallagher's compensation which was not paid to him was deducted from the Company's estimated loss. See Schedule 4 in Appendix A.

### d. Treasury Payments

Beginning in 2018, Mr. Gallagher directed that his Kiawah Island Club fees be paid by the Company, although it was known policy that the Company did not pay for golf or country club memberships. The Company's finance department identified payments through the Company's Treasury department in 2018, 2019, and 2020 related to Mr. Gallagher's dues to the Kiawah Island Club.[9] We obtained support for the payments and discussed same with Company management.

Additionally, the Company's Treasury department provided a listing of all Treasury payments issued from 2018 to 2023, which included vendor names, dates, and payment amounts. We reviewed this information and inquired with Company management to identify other unexpected or unusual payments, including round dollar payments or non-business vendors. This analysis identified an additional two payments, totaling $59,763.00, which the Company determined to be Mr. Gallagher's personal expenses.

The dues paid to Kiawah Island Club, and the two payments identified as personal expenses, were included in the estimated loss calculation. See Schedule 5 in Appendix A.

### e. Corporate Jet

The Company does not have a policy regarding usage of the corporate jet, and the Chief Financial Officer stated Mr. Gallagher did not permit him to establish such a policy. Based on discussions with Company personnel, the jet was heavily used by Mr. Gallagher. Flight details were maintained by Mr. Gallagher's executive assistant, who stated that passenger names were not always provided to her.

Following Mr. Gallagher's termination, Company management reviewed flight records and annotated the same based on their understanding of the purpose of each trip. We reviewed the

---

[7] The manual check items excluded as potential adjustments to Mr. Gallagher's W-2 relate to various payments made to two golf clubs (The Cliffs and Briars Creek) and one payment for the International Sports Management US Open, totaling $111,766.58.

[8] The amounts withheld as special adjustments were $4,100 in FY2018, $5,000 in FY2021, and $5,000 in FY2022.

[9] The wire details for payments dated March 5, 2018, and March 22, 2019 specifically indicate "Annual Dues for Mr. Jody Gallagher," while support for a February 11, 2020 wire payment includes an email chain between Mr. Gallagher and a Kiawah Golf Club representative.



flights records and annotations, and the table below summarizes the designations as determined by the Company:

| Flight type | Flight hours | % Flight hours |
|---|---:|---:|
| Personal | 352 | 32% |
| Business | 188 | 17% |
| Charter[10] | 516 | 47% |
| Undetermined | 36 | 4% |
| Total | 1,092 | 100% |

Based on the flights identified as personal, Company finance applied the Standard Industry Fare Level ("SIFL") to calculate a value of the personal flights taken by Mr. Gallagher. The SIFL value of the flights was then reflected as adjustments or potential adjustments to Mr. Gallagher's W-2s. We reviewed the SIFL rates applied and confirmed that the flights valued at SIFL were generally consistent with the flights identified above.[11] The SIFL value of the flights was then included in the loss calculation.[12] See Schedule 6 in Appendix A.

VI.     Interest / Estimated Use of Funds Loss

For purposes of this calculation, we assumed losses to the Company began in 2018. Furthermore, the Company suffered additional losses over this time as it was unable to deploy the funds identified as improperly used by Mr. Gallagher (commonly known as the Company's opportunity cost). To calculate the Company's loss resulting from its inability to use its funds (including using the SIFL value of flights as a proxy for the cost to the Company to operate the flights[13]), we applied interest to the losses identified as Charged Conduct or Uncharged/Relevant Conduct. Interest was calculated through January 1, 2025, which is the estimated date of Mr. Gallagher's sentencing, using AFL's historical internal rate of return, which is AFL's expected return had it invested the funds itself. Based on discussion with AFL's Tax Director, we understand AFL's historical rate of return ranged from 11% to 12%, and we therefore applied the midpoint, 11.5%, as the applicable rate for the calculation. AFL's Chief Financial Officer confirmed that this historical rate of return applied throughout the period analyzed.

VII.     Limitations

This report does not include certain areas requiring further investigation, or otherwise not identified by management as a personal expense.

---

[10] These flights are private charters by third-party individuals who are unaffiliated with either Mr. Gallagher or the Company. Per discussion with the CFO, the Company receives payment for these flights.
[11] We observed that the Company updated its designations for a small number of flights based on further information obtained by management.
[12] Mr. Gallagher caused the Company to acquire the jet, as well as enter into a sale and leaseback agreement for the jet, which required the Company to pay a $600,000 security deposit. Although these transactions were effectuated at Mr. Gallagher's direction, they are not reflected in the estimated losses as we understand, based on discussion with management, that the Company has elected to retain the jet and continues to use it for business purposes.
[13] We understand that using the SIFL calculation is conservative, as the actual cost for operating each flight would exceed the SIFL calculated amount.



This analysis does not reflect the value of other benefits accruing to Mr. Gallagher at the Company's expense (e.g., imputed rent for his use of 9 Eugenia) or his personal use of certain Company assets (e.g., sporting event tickets) as these items were not formally tracked by the Company.

## VIII. Conclusion

Based on the foregoing, the estimated financial impact of Charged and Uncharged/Relevant Conduct related to J. Gallagher for use in the Victim Impact Statement, as of January 1, 2025, is:

| Item | Charged Conduct | Estimated Uncharged / Relevant Conduct | Total Estimated Loss to AFL/Fujikura [3] |
|---|---|---|---|
| Costs to Acquire, Maintain, and Sell 9 Eugenia [1] | $ 498,145.03 | $ - | $ 498,145.03 |
| J. Gallagher Improper Personal Expenses [2] | - | 1,900,959.47 | 1,900,959.47 |
| **Estimated Loss Related to J. Gallagher Alleged Conduct** | $ 498,145.03 | $ 1,900,959.47 | $ 2,399,104.50 |

[1] These costs are presented net of proceeds received by AFL on the disposition of the property.
[2] Personal expenses identified include items paid via the Company's T&E reporting system, manual check, or AFL Treasury, as well as the value of Mr. Gallagher's personal use of the corporate jet.
[3] Total loss is calculated as of January 1, 2025.

Refer to Appendix A for estimated loss details. The findings in this report are supported by detailed calculations and assumptions outlined in Schedules 1 through 6 of Appendix A.

Respectfully submitted,

James A. Carroll, CPA/CFF, CFE, CRMA, MBA, MS

Managing Director – Forensics



IX.    Appendix and Schedules

**Appendix A**          **Summary of Estimated Losses**
    Schedule 1          9 Eugenia
    Schedule 2          KIC Deposit
    Schedule 3          Personal Travel and Expense
    Schedule 4          Manual Checks
    Schedule 5          Treasury Payments
    Schedule 6          Corporate Jet

U.S. v. J. Gallagher
Estimated Financial Impact of Charged and Uncharged/Relevant Conduct

| Item | Charged Conduct | Estimated Uncharged / Relevant Conduct | Total Estimated Loss to AFL/Fujikura [3] |
|---|---|---|---|
| Costs to Acquire, Maintain, and Sell 9 Eugenia [1] | $ 498,145.03 | $ - | $ 498,145.03 |
| J. Gallagher Improper Personal Expenses [2] | - | 1,900,959.47 | 1,900,959.47 |
| Estimated Loss Related to J. Gallagher Alleged Conduct | $ 498,145.03 | $ 1,900,959.47 | $ 2,399,104.50 |

[1] These costs are presented net of proceeds received by AFL on the disposition of the property.
[2] Personal expenses identified include items paid via the Company's T&E reporting system, manual check, or AFL Treasury, as well as the value of Mr. Gallagher's personal use of the corp
[3] Total loss is calculated as of January 1, 2025.

| Assumptions | Value of items excluded |
|---|---|
| Included manual checks as identified by the Company and included in recalculated wages for potential adjustment to Mr. Gallagher's W-2. | $ 111,766.58 |
| Included T&E entries as identified by the Company and included in recalculated wages for potential adjustment to Mr. Gallagher's W-2. | 45,478.54 |
| | $ 157,245.12 |

Transactions which are expected, but have not yet occurred (e.g. recoveries/refunds, payment of taxes), are assumed to occur in 2025.
Assumed gain on the sale of 9 Eugenia is taxable at AFL's ordinary tax rate. Assumed ordinary tax rate equals AFL's blended federal tax rate for FY2024 (23.09%) plus 5% South Carolina tax
Sentencing is estimated to occur on January 1, 2025, and interest is calculated through that date.
Applies mid-year convention to cash expenditures in a given year, and applies one half of the annual interest rate in the year the loss took place.
Estimated use of funds loss is based on AFL's historical internal rate of return, which the Compnay represented is between 11-12%. Assumed the midpoint of the given range (11.5%).

Detail - Financial Impact of Charged Uncharged/Relevant Conduct
Interest Based on Company Internal Rate of Return

U.S. v. J. Gallagher
Estimated Financial Impact of Charged and Uncharged/Relevant Conduct

## Charged Conduct

| Year | Payments Related to 9 Eugenia | Years to Estimated Sentencing Date [1] | Estimated Use of Funds (Gain)/Loss [2] | Estimated Loss Related to 9 Eugenia |
|---|---|---|---|---|
| 2020 | $ 4,032,101.08 | 4.25 | $ 2,371,873.47 | |
| 2021 | 2,055,193.71 | 3.5 | 953,062.33 | |
| 2022 | 608,588.00 | 2.5 | 190,345.36 | |
| 2023 | 132,398.13 | 1.5 | 23,483.22 | |
| 2024 | 122,688.76 | 0.5 | 6,862.67 | |
| 2024 (sale only) | (10,915,297.79) | 0.25 | (301,123.30) | |
| 2025 | 1,217,969.40 | - | - | |
| Total | $ (2,746,358.71) | | $ 3,244,503.74 | $ 498,145.03 |

*Reference*      *Sch. 1. 9 Eugenia*

## Uncharged/Relevant Conduct
A. Personal Expenses

| Year | Kiawah Island Club Deposits | Personal Expenses Charged to T&E | Personal Expenses Paid by Check | Personal Expenses Paid via Treasury | Personal Use of Corporate Jet | Total Personal Expenses | Years to Estimated Sentencing Date [1] | Estimated Use of Funds (Gain)/Loss [2] | Estimated Loss Related to Personal Expenses |
|---|---|---|---|---|---|---|---|---|---|
| 2018 | $ - | 24,938.87 | 15,150.00 | 10,836.00 | $ - | 50,924.87 | 6.5 | $ 52,402.78 | |
| 2019 | - | 40,990.05 | 67,200.00 | 11,529.00 | - | 119,719.05 | 5.5 | 98,139.71 | |
| 2020 | 110,000.00 | 6,751.53 | 57,526.81 | 74,413.61 | 50,751.98 | 299,443.93 | 4.5 | 189,267.41 | |
| 2021 | - | 24,379.20 | 38,947.81 | - | 318,975.10 | 382,302.11 | 3.5 | 177,286.33 | |
| 2022 | - | 25,015.73 | 65,634.50 | 9,763.00 | 195,022.91 | 295,436.14 | 2.5 | 92,402.24 | |
| 2023 | - | 7,895.09 | 45,096.63 | - | 140,197.69 | 193,189.41 | 1.5 | 34,265.66 | |
| 2024 | (79,380.00) | - | - | - | - | (79,380.00) | 0.5 | (4,440.17) | |
| 2025 | - | - | - | - | - | - | - | - | |
| Total | $ 30,620.00 | $ 129,970.47 | $ 289,555.75 | $ 106,541.61 | $ 704,947.68 | $ 1,261,635.51 | | $ 639,323.96 | $ 1,900,959.47 |

*Reference*    *Sch 2. KIC Deposit*    *Sch 3. Personal T&E*    *Sch 4. Manual Checks*    *Sch 5. Treasury Payments*    *Sch 6. Corporate Jet*

## Notes
[1] Sentencing is assumed to occur on January 1, 2025. Mid-year convention is applied to all costs (i.e. funds expended in 2024 are assumed spent on 6/30/2024), except for the purchase and sale of 9 Eugenia.
As the purchase and sale of 9 Eugenia each occurred in September (2020 and 2024 respectively), we have applied one quarter's interest in the first year to the purchase and sale transactions.
We consider this approach reasonable as these large transactions occur at a single point in time, rather than spread across the year, with the period to year end (October - December) representing one quarter.
[2] Calculates value of historical losses based on AFL's historical internal rate of return.
Company personnel represented AFL's internal rate of return is between 11-12% over the period 2018-2024. This calculation applies the midpoint of that range, or 11.5%.
AFL's Chief Financial Officer confirmed that this internal rate of return was applicable to the historical years 2018 to 2023.
AFL Internal Rate of Return      11.50%

**U.S. v. J. Gallagher**
**Net Costs of 9 Eugenia Property**

| Item | Transaction Date | Year | Cash paid / (received) by AFL/Fujikura | Notes |
|---|---|---|---|---|
| **Land Acquisition Costs (capitalized costs)** | | | | |
| Deposit for Purchase of 9 Eugenia | 8/18/2020 | 2020 | $ 195,000.00 | |
| Cash paid at settlement | 9/14/2020 | 2020 | 3,834,926.08 | |
| Subtotal | | | $ 4,029,926.08 | Note 1 |
| | | | | |
| **Home Construction Costs (capitalized costs)** | | | | |
| Kiawah Island license/permit fee | 10/5/2020 | 2020 | $ 2,175.00 | Note 1 |
| Payment to EPIC - 1 | 2/3/2021 | 2021 | 323,400.00 | |
| Payment to EPIC - 2 | 3/29/2021 | 2021 | 160,868.00 | |
| Payment to EPIC - 3 | 4/28/2021 | 2021 | 163,243.00 | |
| Payment to EPIC - 4 | 6/2/2021 | 2021 | 178,636.00 | |
| Payment to EPIC - 5 | 7/1/2021 | 2021 | 172,003.00 | |
| Payment to EPIC - 6 | 7/27/2021 | 2021 | 107,686.00 | |
| Payment to EPIC - 7 | 8/30/2021 | 2021 | 200,000.00 | |
| Payment to EPIC - 8 | 10/1/2021 | 2021 | 287,932.00 | |
| Payment to EPIC - 9 | 11/4/2021 | 2021 | 225,000.00 | |
| Payment to EPIC - 10 | 12/2/2021 | 2021 | 225,000.00 | |
| Payment to EPIC - 11 | 6/6/2022 | 2022 | 250,000.00 | |
| Payment to EPIC - 12 | 8/30/2022 | 2022 | 251,300.00 | |
| Subtotal | | | $ 2,547,243.00 | |
| | | | | |
| **Property Taxes** | | | | |
| 2020 property taxes | 1/27/2021 | 2021 | $ 12,608.85 | $40,621.14 paid by AFL less credit for pro-rated property tax ($28,012.29) received at closing |
| Refund for overpayment | 3/5/2021 | 2021 | (1,183.14) | |
| Payment to J. Gallagher for 2021 property taxes | 1/11/2022 | 2022 | 53,328.00 | Property tax was paid from the Gallaghers' personal account and reimbursed by AFL via wire payment |
| Payment of 2022 property taxes | 10/27/2022 | 2022 | 53,960.00 | |
| Payment of 2023 property taxes | 1/12/2024 | 2024 | 88,643.72 | |
| | | | $ 207,357.43 | |

U.S. v. J. Gallagher
Net Costs of 9 Eugenia Property

| Item | Transaction Date | Year | Cash paid / (received) by AFL/Fujikura | Notes |
|---|---|---|---|---|
| **Other Identified Costs** | | | | |
| Maintenance & Upkeep fees | 2023 | 2023 | $  24,447.86 | |
| Maintenance & Upkeep fees | 2024 | 2024 | 32,435.44 | |
| Homeowners Insurance | 2023 | 2023 | 92,452.01 | |
| Flood Insurance | 2023 | 2023 | 15,498.26 | |
| Flood Insurance | 2024 | 2024 | 1,609.60 | |
| **Subtotal** | | | $  166,443.17 | |
| | | | | |
| **Property Sale** | | | | |
| Sale price | | | $ (11,600,000.00) | |
| HOA Refund | | | (837.51) | |
| Trash Refund | | | (275.17) | |
| Property tax | | | 62,829.89 | |
| Recording fees | | | 15.00 | |
| State transfer tax | | | 42,920.00 | |
| Listing agent commission | | | 290,000.00 | |
| Selling agent commission | | | 290,000.00 | |
| Wire fee | | | 50.00 | |
| **Total proceeds received by AFL from sale** | 9/16/2024 | 2024 | $ (10,915,297.79) | |
| | | | | |
| **Estimated tax on property sale** | | | | |
| Land acquisition | | | $  4,032,101.08 | *Note 1* |
| Home construction costs | | | 2,547,243.00 | |
| Book value of 9 Eugenia (AFL's estimated tax basis) | | | 6,579,344.08 | |
| Proceeds received on sale | | | 10,915,297.79 | |
| Realized gain on sale (taxable income to AFL) | | | $  4,335,953.71 | |
| | | | | *Assumes ordinary tax rates apply on non-business related gain.* |
| | | | | *Assumes 23.09% federal tax rate based on AFL's blended tax* |
| Blended corporate tax rate | | | 28.09% | *rate in FY24 plus 5% South Carolina tax rate.* |
| Estimated tax due by AFL on gain of sale of house | | 2025 | $  1,217,969.40 | *assumes taxes due are paid in 2025* |
| | | | | |
| **Estimated gain on sale of house to AFL, net of taxes, but before Use of Funds Loss calculation** | | | $  (2,746,358.71) | |

**Note 1**
AFL's book value of the property is as follows:

| | | |
|---|---|---|
| Land acquisition | $ | 4,029,926.08 |
| Kiawah Island license/permit fee | | 2,175.00 |
| **Total** | $ | 4,032,101.08 |

# Appendix A - Schedule 2
## KIC Deposit

**U.S. v. J. Gallagher**
**Net Costs of Kiawah Island Club Membership Deposits**

| Item | Transaction Date | Year | | Cash paid / (received) by AFL/Fujikura |
|---|---|---|---|---|
| Membership deposit | 9/11/2020 | 2020 | $ | 110,000.00 |
| Refund of membership deposit #6071 | 9/19/2024 | 2024 | | (79,380.00) |
| **Total** | | | **$** | **30,620.00** |

# Appendix A - Schedule 3
## Personal Travel and Expense

U.S. v. J. Gallagher
J. Gallagher Personal Expenses Charged to AFL Travel & Expense System

| Item | Transaction Date | Year | Cash paid / (received) by AFL/Fujikura |
|---|---|---|---|
| QTEGO AUCTIONS | 4/26/2018 | 2018 | $ 10,000.00 |
| PEBBLE BEACH RESORTS | 10/10/2018 | 2018 | 9,250.00 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 740.00 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 740.00 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 740.00 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 740.00 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 740.00 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 109.14 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 109.14 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 109.14 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 109.14 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 109.14 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 77.40 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 68.32 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 93.43 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 1,068.02 |
| INN AT SPANISH BAY #102 | 12/4/2018 | 2018 | 136.00 |
| RESORTS DEPOSIT | 4/29/2019 | 2019 | 9,957.20 |
| ANA AIR    2057358061687 | 5/29/2019 | 2019 | 2,512.53 |
| LODGE AT PEBBLE BCH #202 | 8/28/2019 | 2019 | 10,763.94 |
| LODGE AT PEBBLE BCH #202 | 8/28/2019 | 2019 | 2,757.03 |
| PEBBLE BEACH RESORTS | 9/9/2019 | 2019 | 9,350.00 |
| LODGE AT PEBBLE BCH #202 | 12/30/2019 | 2019 | 1,095.21 |
| LODGE AT PEBBLE BCH #202 | 12/30/2019 | 2019 | 1,095.21 |
| LODGE AT PEBBLE BCH #202 | 12/30/2019 | 2019 | 1,095.21 |
| LODGE AT PEBBLE BCH #202 | 12/30/2019 | 2019 | 1,095.21 |
| LODGE AT PEBBLE BCH #202 | 12/30/2019 | 2019 | 486.95 |
| LODGE AT PEBBLE BCH #202 | 12/30/2019 | 2019 | 595.13 |
| LODGE AT PEBBLE BCH #202 | 12/30/2019 | 2019 | 186.43 |
| **Subtotal - legacy T&E** | | | **$ 65,928.92** |
| Kiawah Island | 6/16/2020 | 2020 | 853.44 |
| GROVE XXIII | 7/13/2020 | 2020 | 1,405.83 |
| THE CLIFFS COMMUNITIES | 7/27/2020 | 2020 | 1,203.49 |
| SP * JOHN GUYTON GOLF | 8/6/2020 | 2020 | 1,122.14 |
| PIKEWOOD NATIONAL GOLF CL | 10/6/2020 | 2020 | 1,727.66 |
| STUBHUB, INC. | 12/15/2020 | 2020 | 438.97 |
| KIAWAH ISLAND UTILITY | 1/4/2021 | 2021 | 124.79 |
| ALBANY - GOLF SHOP | 1/11/2021 | 2021 | 701.43 |
| WISCONSIN GOLF TRIPS | 2/15/2021 | 2021 | 6,000.00 |
| KIAWAH ISLAND GOLF RES | 3/30/2021 | 2021 | 180.70 |

# Appendix A - Schedule 3
# Personal Travel and Expense

U.S. v. J. Gallagher
J. Gallagher Personal Expenses Charged to AFL Travel & Expense System

| Item | Transaction Date | Year | Cash paid / (received) by AFL/Fujikura |
|---|---|---|---|
| PB *ST. JOSEPH'S | 6/1/2021 | 2021 | 1,500.00 |
| PGA CHAMPIONSHIP | 6/1/2021 | 2021 | 351.95 |
| PGA CHAMPIONSHIP | 6/1/2021 | 2021 | 204.22 |
| WISCONSIN GOLF TRIPS | 7/13/2021 | 2021 | 12,600.00 |
| SAND VALLEY GOLF RESOR | 8/17/2021 | 2021 | 600.97 |
| HEGES RESTAURANT | 8/20/2021 | 2021 | 221.90 |
| WINGED FOOT GOLF CLUB INC | 9/14/2021 | 2021 | 181.17 |
| LA MELA RISTORANTE | 9/14/2021 | 2021 | 1,566.49 |
| LA TELA PIZZERIA | 11/9/2021 | 2021 | 145.58 |
| SQ *NFL SHOP - LEGENDS GL | 2/21/2022 | 2022 | 464.42 |
| COSMOPOL-FRONT DESK | 3/21/2022 | 2022 | 226.76 |
| COSMOPOL-FRONT DESK | 3/21/2022 | 2022 | 226.76 |
| COSMOPOL-FRONT DESK | 3/21/2022 | 2022 | 226.76 |
| CCLV - STEAKHOUSE | 3/21/2022 | 2022 | 1,121.19 |
| ARIA CARBONE | 3/21/2022 | 2022 | 397.29 |
| COSMOPOL-STK | 3/21/2022 | 2022 | 379.95 |
| ANGC MERCHANDISE | 5/1/2022 | 2022 | 609.12 |
| ANGC MERCHANDISE | 5/7/2022 | 2022 | 879.12 |
| ARIA CARBONE | 5/7/2022 | 2022 | 376.14 |
| CASCATA GOLF COURSE | 5/7/2022 | 2022 | 1,098.00 |
| Cliffs | 6/20/2022 | 2022 | 531.10 |
| ST. JOSEPHS CATHOLIC S | 6/27/2022 | 2022 | 1,500.00 |
| Cliffs | 7/19/2022 | 2022 | 797.24 |
| SEVEN MILE RESORT MANAGE | 8/22/2022 | 2022 | 4,563.30 |
| Briars | 9/2/2022 | 2022 | 1,877.94 |
| KIAWAH ISLAND GOLF RES | 9/30/2022 | 2022 | 326.65 |
| LA TELA PIZZERIA | 10/10/2022 | 2022 | 129.16 |
| THEFRIARS.COM | 10/10/2022 | 2022 | 5,595.00 |
| STUBHUB, INC. | 10/24/2022 | 2022 | 1,216.82 |
| OHOOPEE MATCH CLUB - GOL | 10/27/2022 | 2022 | 573.48 |
| OHOOPEE MATCH CLUB | 11/1/2022 | 2022 | 1,659.33 |
| HEGES RESTAURANT | 12/16/2022 | 2022 | 240.20 |
| TST* FUJI SUSHI BAR AND G | 1/4/2023 | 2023 | 216.25 |
| KIAWAH ISLAND GOLF RES | 1/12/2023 | 2023 | 350.80 |
| TST* FUJI SUSHI BAR AND G | 1/26/2023 | 2023 | 126.30 |
| ENTERPRISE RENT-A-CAR | 2/10/2023 | 2023 | 1,260.10 |
| ARIA - FRONT DESK | 2/15/2023 | 2023 | 286.00 |
| ARIA - FRONT DESK | 2/15/2023 | 2023 | 89.29 |
| LA TELA PIZZERIA | 2/22/2023 | 2023 | 133.40 |
| SQ *NFL SHOP - LEGENDS GL | 2/22/2023 | 2023 | 291.68 |
| SLS - CARNA | 3/30/2023 | 2023 | 4,335.75 |

## Personal Travel and Expense

U.S. v. J. Gallagher
J. Gallagher Personal Expenses Charged to AFL Travel & Expense System

| Item | Transaction Date | Year | Cash paid / (received) by AFL/Fujikura |
|---|---|---|---|
| ANGC MERCHANDISE | 4/18/2023 | 2023 | 679.32 |
| LA TELA PIZZERIA | 4/19/2023 | 2023 | 126.20 |
| Subtotal - current T&E system | | | $ 64,041.55 |
| | | | |
| Total | | | $ 129,970.47 |

U.S. v. J. Gallagher
J. Gallagher Personal Expenses Paid by AFL Manual Checks

| Item | Transaction Date | Year | Cash paid / (received) by AFL/Fujikura | Notes |
|---|---|---|---|---|
| **BB&T Account** | | | | |
| MS Charity Event | | 2018 | $ 19,250.00 | |
| Special Adjustment from Wages (FY18) | | 2018 | (4,100.00) | *AFL withheld $4,100 from Mr. Gallagher's compensation at his request, for his use of various Company assets* |
| 2019 football tickets | | 2019 | 3,200.00 | |
| Clemson Charity Event- req by Jody, QTEGO Auctions Indianapolis | | 2019 | 14,000.00 | |
| Kiawah Club, application for membership privileges | | 2019 | 50,000.00 | |
| Reimbursement Sage Valley Golf Club | | 2020 | 50,000.00 | |
| **Subtotal** | | | $ 132,350.00 | |
| | | | | |
| **Bank of America Account** | | | | |
| Florrio Perrucci attorneys | | 2020 | $ 5,000.00 | |
| Panthers champion ACC championship | | 2020 | 2,526.81 | |
| Kiawah Island Club | | 2021 | 12,096.00 | |
| International Sports Mgmt deposit President cup | | 2021 | 6,875.00 | |
| Carolina Panthers | | 2021 | 4,976.81 | |
| Jody Gallagher Clemson Pres leadership Fund | | 2021 | 20,000.00 | |
| Kiawah Island club 3817 | | 2022 | 11,434.50 | |
| Florrio Perrucci | | 2022 | 500.00 | |
| Panthers Football | | 2022 | 18,700.00 | |
| Reimbursement for Clemson President Leadership Circle | | 2022 | 40,000.00 | |
| Golf Club at Briars Creek dues | | 2023 | 12,656.75 | |
| Kiawah Island Club | | 2023 | 12,936.00 | |
| Panthers Football Superbowl | | 2023 | 7,960.88 | |
| Panthers Football Superbowl | | 2023 | 15,921.76 | |
| Exclusion from 2023 W-2 Adjustments | | 2023 | (4,378.76) | |
| Special Adjustment from Wages (FY21) | | 2021 | (5,000.00) | *AFL withheld $5,000 from Mr. Gallagher's compensation at his request, for his use of various Company assets* |
| Special Adjustment from Wages (FY22) | | 2022 | (5,000.00) | *AFL withheld $5,000 from Mr. Gallagher's compensation at his request, for his use of various Company assets* |
| **Subtotal** | | | $ 157,205.75 | |
| | | | | |
| **Total** | | | $ 289,555.75 | |

# Appendix A - Schedule 5
## Treasury Payments

**U.S. v. J. Gallagher**
**J. Gallagher Personal Expenses Paid Through AFL Treasury Department**

| Item | Transaction Date | Year | Cash paid / (received) by AFL/Fujikura |
|------|-----------------|------|----------------------------------------|
| Kiawah Island Club dues (2018) | 3/5/2018 | 2018 | $ 10,836.00 |
| Kiawah Island Club dues (2019) | 3/22/2019 | 2019 | 11,529.00 |
| Kiawah Island Club dues (2020) | 2/11/2020 | 2020 | 24,413.61 |
| SVJI Sports Foundation | | 2020 | 50,000.00 |
| Sporting event tickets Int'l Sports Mgmt | | 2022 | 9,763.00 |
| **Total** | | | **$ 106,541.61** |

# Appendix A - Schedule 6
## Corporate Jet

U.S. v. J. Gallagher
SIFL Value of J. Gallagher's Personal Use of Corporate Jet

| Item | Transaction Date | Year | Value of benefits paid by AFL/Fujikura |
|------|------|------|------|
| **SIFL Value of Personal Flights** | | | |
| 2020 | | 2020 | $ 50,751.98 |
| 2021 | | 2021 | 318,975.10 |
| 2022 | | 2022 | 195,022.91 |
| 2023 | | 2023 | 140,197.69 |
| **Total** | | | $ 704,947.68 |